O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ARDIS BROWN, | ) | Case No. CV 07-6787-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

**I.   Factual and Procedural Background**

     This is an action for judicial review of the Commissioner's final decision denying Plaintiff Ardis Brown's application for disability insurance benefits and supplemental security income benefits under 42 U.S.C. §§ 416(i), 423. Brown was born on December 24, 1972 and is currently 35 years old. (Administrative Record ("AR") 46.) He sustained a close-range shotgun wound to his left shoulder in the early 1990s, which destroyed his left rotator cuff. (AR 242, 260-61.) Brown is right handed. (AR 273.) While working in a group home in May 2002, he attempted to break up a fight, was stabbed in the hand and aggravated his existing shoulder injury. (AR 261-62.) Brown claims that he became

disabled and unable to work on July 1, 2004. (AR 258.) Since that date his only job has been caring for his eight-year-old niece. (AR 259.)

Brown's applications for benefits were denied initially and on reconsideration. (AR 30-35.) On June 13, 2007, a de novo hearing was held before ALJ Mary L. Everstine. (AR 255.) Brown testified and was represented by counsel. A vocational expert also testified.

In a decision dated July 10, 2007, the ALJ found that Brown was not disabled under the Social Security Act. The ALJ found that Brown had severe impairments, including: degenerative changes of the left shoulder, status post gunshot wound and surgical repair with residual adhesive capsulitis and scapular dysfunction; and degenerative changes to the left hand, status post left hand extensor tendon repair. (AR 14.) However, the ALJ further found that Brown had the residual functional capacity ("RFC") to lift or carry a maximum of five pounds with his upper left extremity. The ALJ limited Plaintiff from reaching or other activities above shoulder level with his upper left extremity; climbing or working at unprotected heights; operating hazardous machinery; and performing more than occasional fine and gross manipulative activities with his left hand. In addition, it was found that Plaintiff was not limited in his use of his upper right extremity, or in sitting, standing, and walking. (AR 15.) The ALJ concluded that Brown is unable to perform his past relevant work, but could perform jobs that exist in significant numbers in the national economy, including working as an information clerk, counter clerk, and call out operator. (AR 17-18.)

The Appeals Council denied Plaintiff's request for review. (AR 5.) Plaintiff then filed this action on October 11, 2007. There are three issues before the Court: (1) whether the ALJ properly considered the treating physician's opinion, (2) whether the ALJ properly discussed a

2

1  physical therapy evaluation, and (3) whether the ALJ properly considered

2  the type, dosage, and side effects of Plaintiff's prescribed

3  medications.

4

5  **II.  Standard of Review**

6       Under 42 U.S.C. § 405(g), a district court may review the

7  Commissioner's decision to deny benefits. The Commissioner's or ALJ's

8  decision must be upheld unless "the ALJ's findings are based on legal

9  error or are not supported by substantial evidence in the record as a

10 whole." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)(quoting

11 *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999)). Substantial

12 evidence means such evidence as a reasonable person might accept as

13 adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389,

14 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It

15 is more than a scintilla, but less than a preponderance. *Robbins v. Soc.*

16 *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether

17 substantial evidence supports a finding, the reviewing court "must

18 review the administrative record as a whole, weighing both the evidence

19 that supports and the evidence that detracts from the Commissioner's

20 conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If

21 the evidence can support either affirming or reversing the ALJ's

22 conclusion," the reviewing court "may not substitute its judgment for

23 that of the ALJ." *Robbins*, 466 F.3d at 882.

24 //

25 //

26 //

27 //

28 //

3

**III. Discussion and Analysis**

    **A.    The ALJ Did Not Improperly Discount the Treating Physician's Opinion**

    Brown claims that the ALJ improperly discounted the opinion of Dr. Howard Bass, Brown's treating orthopaedist. (Joint Stipulation ("JS") at 3.) In a muskuloskeletal report dated August 17, 2005, Dr. Bass reported that the flexion, extension, and abduction in Brown's left shoulder were all measured at twenty degrees. (AR 229.) Adduction in that shoulder was measured at zero. (*Id.*) Dr. Bass reported atrophy in Brown's left arm as compared to his right arm, as well as his left shoulder and upper back. (*Id.*) Dr. Bass also reported that Brown was unable to make a fist or extend his left hand. (AR 229-30.) On a scale of two to five, Dr. Bass rated Brown's motor abilities – presumably with respect to his left upper extremity – to be two, meaning that Brown could only "active[ly] move[] the body part with gravity eliminated." (AR 229.) Dr. Bass determined that Brown was unable to use his left upper extremity above shoulder level and frequently drops objects. (AR 230.) Dr. Bass also determined that Brown was unable to use his left upper extremity "for any activity (functional), e.g., housework, typing, grooming, etc." (AR 230.)

    The ALJ discussed two of Dr. Bass' reports, including the one that Brown places at issue here, in his decision. The ALJ first discussed a report dated August 24, 2004.[1] (AR 17, 189.) In that report Dr. Bass opined that Brown was "totally disabled from any and all types of employment." (*Id.*) In the August 2004 report, Dr. Bass also determined that Brown was unable to lift more than five pounds, is fifty percent

---

    [1] The ALJ incorrectly referred to the date of this report as August 2002.

limited in handling objects and seventy-five to one-hundred percent limited in driving. (*Id.*) The ALJ noted that "[a]n assessment of '50%' limitation in handling objects contradicts the claimant's testimony that he has been unable to use his left upper extremity in any way." (*Id.*) The ALJ then mentioned the August 2005 report in a single sentence, noting that "in a more recent statement, dated August 2005, Dr. Bass indicates that the claimant has no use of his left upper extremity." (AR 17.)

The ALJ contrasted these opinions of Dr. Bass with the opinions of a consultative orthopaedic examiner dated October 2004. The consultative examiner opined that Brown has retained the ability to perform occasional fine and gross manipulative activities as well as the ability to lift ten pounds occasionally and five to ten pounds frequently with his left upper extremity. (*Id.*) The consultative examiner further opined that Brown could no more than occasionally work at heights or climb ladders, and otherwise had no significant physical limitations. (*Id.*) The ALJ found this opinion to be well-supported by the medical evidence and credited it with "controlling weight." (*Id.*)

The ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v.*

5

1   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

2   While it is true that the ALJ stated that the consultative
3   examiner's opinion would be given controlling weight, the ALJ's actual
4   RFC determination substantively incorporates Dr. Bass' opinion, not the
5   consultative examiner's opinion. The ALJ found that Brown could lift or
6   carry a maximum of five pounds with his upper left extremity. (AR 15.)
7   In his August 2004 report, Dr. Bass determined that Brown could not lift
8   or carry more than five pounds. (AR 189.) The ALJ found that Brown could
9   not perform reaching or other activities above shoulder level with his
10  upper left extremity. (AR 15.) In his August 2005 report, Dr. Bass
11  determined that Brown was unable to use his left upper extremity above
12  shoulder level. (AR 230.) The ALJ's findings here were completely
13  consistent with the opinion of Brown's treating physician, and
14  inconsistent with the opinion of the consultative examiner, who
15  determined that Brown could lift ten pounds occasionally and five to ten
16  pounds frequently with his left upper extremity. It is thus clear that
17  although the ALJ stated that she was giving the consultative examiner's
18  opinion controlling weight, she in fact gave Dr. Bass' opinion
19  controlling weight.[2] Brown is accordingly not entitled to relief on this
20  claim.

21  **B.    The ALJ Did Not Err in Failing to Credit the Physical Therapy**
22  **Evaluation**

23  Brown claims the ALJ improperly failed to credit a physical therapy
24  evaluation of December 22, 2003, that reported Brown was "unable" to

---

27  [2]   The only opinion of Dr. Bass that the ALJ appears to have
    actually discounted was his conclusions that Brown was "totally
    disabled." As the ALJ correctly noted, disability is a determination
28  expressly reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e).

1  reach or lift. (JS at 8; AR 181.) In fact, the ALJ did not discuss that
2  physical therapy examination at all. The Court thus construes this as a
3  claim that the ALJ improperly failed to account for the December 2003
4  physical therapy evaluation in determining Brown's RFC.

5       The physical therapy evaluation form was apparently completed by
6  Dr. Bass.[3]  Written next to the terms "reaching" and "lifting" on the
7  form is the term "unable." It is fair to say that Dr. Bass found Brown
8  unable to reach and lift when evaluating him for physical therapy
9  purposes.

10      While the ALJ did not expressly reject the opinion of Dr. Bass, she
11 clearly did not credit it as controlling, given that she found Brown to
12 be capable of lifting or carrying up to five pounds. However, as
13 discussed above, the ALJ's finding of Brown's RFC was consistent with
14 Dr. Bass' later determination that Brown could lift up to five pounds.
15 Given the other medical evidence in the record that Brown could lift up
16 to ten pounds, substantial evidence supported the determination that
17 Brown could lift up to five pounds. The ALJ's failure to discuss this
18 particular piece of evidence to the contrary was not erroneous. *See*
19 *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)(finding that an
20 ALJ is not required to discuss every piece of evidence in interpreting
21 the evidence and developing the record). Moreover, the ALJ was not
22 required to accept Dr. Bass' unexplained indication that Brown was
23 unable to lift or reach. *See Thomas v. Barnhart*, 278 F.3d at 957. This
24 claim is without merit.
25 //
26 //
27
28      [3]  The name Bass is written next to the term "MD" on the form.

7

### C. Type, Dosage and Side Effects of Plaintiff's Prescribed Medication

Brown contends that the ALJ failed to properly consider the side effects of his medication, namely Tylenol 3, Advil, and Tylenol. In a pain questionnaire dated August 11, 2004, Brown stated that his medications caused burning in his stomach, nervousness, sleeplessness, irritability, and frustration. (AR 68.) At the hearing, Brown testified, "I take Advil and Tylenol together. I really don't like the, the one that the doctor prescribed because it had me dizzy."[4] (AR 270.)

Social Security Ruling 96-7p states that when assessing the credibility of a claimant's subjective complaints, the ALJ must consider, among several factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." The ALJ thoroughly considered the type and dosage of Brown's medication in discounting his subjective complaints of pain. The ALJ found:

> The record reflects fleeting allegations by the claimant that
> he has required narcotics-based pain medication ... However,
> the claimant has otherwise alleged that he has not required
> any medication, for instance, as shown in his July 2005
> disability questionnaire and in the report of a September 2005
> consultative examination ..., circumstances somewhat
> inconsistent with his allegations of markedly limiting pain.
> Similarly, in the June 2007 hearing, he testified that he uses
> only Tylenol and Advil for pain.

---

[4]   It may be that Plaintiff had stopped taking the prescription medication, Tylenol 3, at the time of the hearing and was only using the over-the-counter medications, Advil and Tylenol.

8

(AR 16.) Consistent with ruling 96-7p, the ALJ here provided clear and convincing reasons relating to medication for discounting Brown's credibility regarding his subjective complaints. *See Orn v. Astrue*, 495 F.3d 625, 635-36 (9th Cir. 2007).

Brown's makes the narrower claim that the ALJ erred by failing to consider the side effects of his medication. However, "[a] claimant bears the burden of proving that an impairment is disabling." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)(quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). There is simply no evidence in the record indicating that the side effects of Brown's medication would have impaired his ability to work. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001)("There were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work."). The ALJ's failure to specifically mention the side effects of Brown's medication was not error.

**IV.   Conclusion**

For the reasons stated above, the case is remanded for further proceedings.


DATED: August 15, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge

9